POTTAWATTAMIE COUNTY DEPART-
MENT OF SOCIAL SERVICES and Pot-
tawattamie County Board of Social Wel-
fare, Appellees,

v.

Elliott LANDAU and Iowa Civil Rights
Commission, Appellants.

No. 55732.

Supreme Court of Iowa.

Sept. 19, 1973.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellants.

Lyle H. Rodenberg, County Atty., and David E. Richter, Chief Deputy County Atty., Council Bluffs, for appellees.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REES and UHLENHOPP, JJ.

REES, Justice.

This appeal is from the order and judgment of the trial court directing the issuance of a writ of prohibition to restrain proceedings by the Iowa Civil Rights Commission on the complaint of one Jackson Graham. We find the court erred in directing the issuance of a writ of prohibition, and reverse with direction.

An action was instituted for the issuance of a writ of prohibition to restrain the defendant Iowa Civil Rights Commission from proceeding with a hearing before defendant Landau, a hearing examiner appointed by the Commission, in connection with a complaint of discrimination filed with the Commission by one Jackson Graham against the plaintiffs. Plaintiffs' petition alleged that the Civil Rights Commission had no jurisdiction to conduct a hearing, that the issues to be considered at the hearing were *res judicata,* that there were certain procedural defects, and that the hearing examiner Landau had indicated bias and prejudice.

Jackson Graham was discharged by the Pottawattamie County Board of Social Welfare, effective November 15, 1970,

from his position as a community program aide in the County Department of Social Services. He filed appeal with the Iowa Merit Employment Commission on November 6, ᴗ1970, and the matter came on for hearing on December 3, 1970.

In the hearing before the Merit Employment Commission, Graham contended he had been effectively and conscientiously carrying out the duties of his employment as he understood them to be; that his discharge was based on allegations of immoral conduct referred to in a supplemental decree in the district court of Pottawattamie County, which allegations were unproven; and that his employer had been unsympathetic and opposed to his active role in community welfare and civil rights programs.

The Merit Employment Commission decided unanimously that Graham should be reinstated to his former position effective December 16, 1970, but that he be suspended without pay from November 15, 1970 to December 15, 1970, due to what the Commission characterized in its order as "poor judgment exercised by Graham in his role as case-worker and community-minded citizen". The decision of the Commission is of particular interest, in the light of the provisions of the Acts of the 62nd General Assembly, chapter 95, § 14 (now section 19A.14, The Code), which provides with regard to the Merit Employment Commission's authority on appeal:

> " * * * If the commission finds that the action complained of was taken by the appointing authority for any * * * racial * * * or nonmerit reasons, the employee shall be reinstated to his former position *without loss of pay* for the period of the suspension. (Emphasis supplied)

Only three days after Graham had taken his appeal to the Iowa Merit Employment Commission, he filed a complaint on November 9, 1970 with the Iowa Civil Rights Commission, the complaint being based on the alleged impropriety of his employer's actions in discharging him. The Department of Social Services was notified of the charge on November 10th, but no further action was taken at that time.

Graham, in conformity with the order of the Merit Employment Commission, was reinstated to his employment on December 16, 1970, but thereafter the Board of Social Welfare again dismissed him, effective December 24, 1970 for misconduct which had occurred both before and after his previous dismissal and reinstatement and during the period of his suspension. The misconduct complained of involved primarily the marital difficulties of one Mrs. Shirley Claycomb. A criminal charge of interference with the administration of justice stemming from the concealment of Mrs. Claycomb's two children was filed against Graham; he was convicted, appealed to this court, and his conviction was affirmed. See State v. Graham, 203 N.W.2d 600 (Iowa 1973).

On December 26, 1970 a second appeal was taken by Graham to the Merit Commission, the case coming on for hearing on January 14, 1971. At the hearing Graham contended that his second discharge was a "continuation of events" which started prior to his first discharge, and insisted his discharge was on a racial basis because of his work with the disadvantaged of the community. Other than Graham's personal statement, no further record was made by him.

On January 18, 1971 the Merit Employment Commission affirmed the second discharge on the ground that Graham had failed to refute the charges which formed the basis of his dismissal.

Action before the Civil Rights Commission again resumed on February 10, 1971 with the Commission notifying the County Department of Social Services that probable cause under chapter 105A had been found on Graham's November, 1970 complaint, and a proposed date for conciliation was fixed to be held at the Commission's office in Des Moines. Thereafter, on

April 1, 1971 the Civil Rights Commission ordered a public hearing with defendant Landau as hearing examiner. On or about April 12, 1971 a notice of such hearing was allegedly delivered to the Department of Social Services, although the department claimed that no complaint was attached thereto.

Hearing commenced before Hearing Examiner Landau on May 3, 1971. A motion to dismiss by plaintiffs was summarily overruled, and the taking of testimony relative to Graham's discharge proceeded. The complaint was amended on May 5, 1971 to include allegations of "discrimination by reason of creed and patterns of racial discrimination", and the scope of the hearing was thereby broadened and extended. The proceeding continued until May 6, 1971 when plaintiffs filed petition for the issuance of a writ of prohibition to restrain defendant Landau as hearing examiner and Iowa Civil Rights Commission from proceeding further with the hearing. A temporary writ of prohibition was ordered to issue at that time.

Hearing was held on the petition for permanent writ of prohibition on June 12, 1971. The court's order and judgment, entered on March 15, 1972, directed that a permanent writ of prohibition issue restraining any further proceedings on Graham's complaint before the Iowa Civil Rights Commission. From such order and judgment, this appeal is taken.

Defendants assign two propositions on which they rely for reversal:

1. The district court has no power under any circumstance to issue a writ of prohibition directed to the Iowa Civil Rights Commission.

2. Even assuming the district court has power to issue a writ of prohibition against the Civil Rights Commission, it was error to issue the writ in the present circumstances.

I. This court has heretofore considered the nature of the writ of prohibition. In Abbott v. Christopher, 253 Iowa 311, 112 N.W.2d 310 (1961), a writ of prohibition was held to have been properly issued against an election contest court where the chairman refused to disqualify himself. The court, in Abbott v. Christopher, 112 N.W.2d at 311, defined and characterized the writ of prohibition as follows:

"The following is an acceptable definition of writ of prohibition: 'As its name imports, the writ is one which commands the person or tribunal to whom it is directed not to do something which, by the suggestion of the relator, the court is informed he is about to do. The writ is commonly defined, substantially, as one to prevent a tribunal possessing judicial or quasi-judicial powers from exercising jurisdiction over matters not within its cognizance, or exceeding its jurisdiction in matters of which it has cognizance.' 42 Am.Jur., Prohibition, § 2."

■ Absent constitutional or statutory restrictions, any court possessing general common-law jurisdiction has the inherent power to issue a writ of prohibition under the proper circumstances. Section 604.1, The Code, 1971 provides:

"The district court shall have general, original, and exclusive jurisdiction of all actions, proceedings, and remedies, both civil and criminal, except in cases where exclusive or concurrent jurisdiction is or may hereinafter be conferred upon some other court or tribunal by the constitution and laws of the state, and shall have and exercise all the powers usually possessed and exercised by courts of record."

Section 604.2, The Code, 1971 provides:

"It shall also possess and exercise jurisdiction in all appeals and writs of error taken in civil and criminal actions and special proceedings authorized to be taken from all inferior courts, tribunals, boards, or officers, under any provisions of the laws of this state, and shall have a general supervision thereof, in all mat-

ters, to prevent and correct abuses, where no other remedy is provided."

■ In Iowa there is no statutory or constitutional provision for the writ of prohibition, and accordingly, we must view the writ of prohibition in its common-law context. In Abbott v. Christopher, *supra*, at page 312 of 112 N.W.2d, this court said (quoting from State ex rel. O'Connor v. District Court, 219 Iowa 1165, 1169, 260 N.W. 73, 75, 99 A.L.R. 967, 972 (1935):

"'It is conceded that neither the Constitution nor the statutes of this state expressly confer upon the Supreme Court the power to issue the writ of prohibition. * * * If, then, the legislature cannot, by direct action, deprive the courts of their inherent power to issue common-law writs necessary to the exercise of their jurisdiction, it surely will not be held that legislative inaction amounts to a denial of this power. It must be assumed then, that our *courts* have the right to issue writs of prohibition.'"

■ II. We must then consider the question as to whom a writ of prohibition may be directed. Issuance of the writ is proper only when directed from a superior court to an inferior court; it cannot be directed by one court to another court of equal rank. See Abbott v. Christopher, *supra*.

The office and function of the writ is well described in the annotation at page 247 of 77 A.L.R. 245:

"* * * prohibition is designed to control the exercise of judicial functions, and will not be granted against an officer or body purely ministerial or legislative in powers and functions, nor to prohibit officers or bodies which are judicial in nature from performing acts which are ministerial in their nature. However, the operation of the writ is not restricted to courts eo nomine, but applies to the judicial acts of all officers or bodies having incidental judicial powers, although such officer or body is primarily a ministerial one."

■ Defendants contend the Civil Rights Commission has executive and investigatory powers under the provisions of section 105A.5(2), (3), The Code, 1971 and that direction of a writ to prohibit the exercise of such powers would be an unconstitutional invasion of the functions of the executive branch of government. This court recognizes the grant of investigatory powers to the Civil Rights Commission, but agrees with appellees' argument that:

"(a)s disclosed by the legislature's grant of powers and duties, the Civil Rights Commission has every attribute of a judicial tribunal * * *."

Section 105A.5(4), The Code, 1971 gives the Commission the power to hold hearings, to subpoena witnesses and compel their attendance, to administer oaths and take testimony. Section 105A.9, The Code, 1971 vests the Commission with power to pass upon the evidence received in any hearing upon a complaint and issue an appropriate order in the case. See Iron Workers Local No. 67 v. Hart, 191 N.W.2d 758 (Iowa 1971).

■ Although it is difficult to differentiate precisely between judicial or quasi-judicial acts, this court will look to the nature of the act performed to determine whether it is of a judicial character. Lehan v. Greigg, 257 Iowa 823, 827, 135 N.W.2d 80, 83 (1965); Porter v. Iowa State Board of Public Instruction, 259 Iowa 571, 576, 144 N.W.2d 920, 923 (1966).

■ In the proceedings entitled Jackson Graham, Complainant vs. Pottawattamie Department of Social Services, filed with the Iowa Civil Rights Commission on November 9, 1970 the matter had proceeded past the investigation, conference and conciliation stage to a hearing to determine the rights of complainant and to mold an effective and affirmative remedy to protect

those rights if necessary. This court must conclude that the Iowa Civil Rights Commission, in the exercise of its power to conduct a hearing upon a complaint filed before it and to afford the complainant appropriate relief as authorized by sections 105A.5 and 105A.9, The Code, 1971, is performing a judicial or quasi-judicial act, and a writ of prohibition may properly issue by a district court to the Commission to restrain abuse of such power if the situation warrants.

III. We now consider what we conceive to be the key issue in the appeal before us, namely, whether the trial court erred in the issuance of the writ of prohibition under the circumstances of the case.

■ Any analysis must be predicated on this primary consideration: prohibition is to be used with great caution, restraint and forbearance, for the furtherance of justice, and to secure order and regularity in judicial proceedings, and should issue only in cases of extreme necessity. The court must be satisfied that there is a potential and contemplated exercise of judicial or quasi-judicial power which is unauthorized by law and which will result in injury for which there is no other adequate remedy. 63 Am.Jur.2d, Prohibition, § 6, pp. 230–231.

■ The basic issue presented on this appeal may be determined upon the point last above stated, for we conclude that there exists an adequate remedy by appeal in this case so as to preclude the necessity for, or propriety of, the issuance of a writ of prohibition.

Section 105A.10, The Code, 1971 provides for judicial review of a final order of the Iowa Civil Rights Commission upon appeal by any claimant or respondent who asserts he is aggrieved by such order. The hearing on appeal is *de novo*, with power in the court to affirm, modify or reverse the Commission's order.

In State ex rel. O'Connor v. District Court, *supra*, this court denied a writ of prohibition sought to be directed to the lower court where the illegality alleged was that the defendants in the action, officers acting under martial law declared by the governor, were immune from civil liability. In a discussion of the contention that although the case might otherwise properly be one for the issuance of prohibition, the writ should not issue because the petitioners had an adequate remedy by appeal or by writ of certiorari, this court at page 80 at 260 N.W. said:

"While this contention is in accord with the general rule, it should be noted that such rule has reference to a remedy that is not only available, but also adequate. As stated in 50 C.J. 686: 'The right to prohibition is defeated, not by the existence, but by the adequacy, of the remedy by appeal. Prohibition is properly granted if the remedy by appeal is inadequate.' (citations) In 50 C.J. 683, it is said: 'Prohibition may issue notwithstanding another remedy for the grievance complained of is available if such other remedy would not afford complete and adequate relief. To be adequate the concurrent remedy must be sufficient to afford the relief the case demands. * * * Whether a remedy is adequate or not is a question resting within the sound discretion of the court to which application for relief is made, and is to be determined on the facts of each particular case.'"

■ IV. Appellees contend the Commission did not have subject matter jurisdiction for the following reasons:

(1) No record is shown of a "probable cause" finding by the Civil Rights Commission.

(2) No notice under section 105A.9(5), the Code, 1971, was served on the Department of Social Services.

(3) The Board of Social Welfare was not served, despite the claim that it was an indispensable party.

We do not pass upon the sufficiency of these contentions for even if proven they do not conclusively divest the Commission of subject matter jurisdiction. As this court said in City of Clinton v. Owners of Property, Etc., 191 N.W.2d 671, 677 (Iowa 1971):

"Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the proceedings belong. Green v. Sherman, 173 N.W.2d 843 (Iowa 1970); Hargis v. Fleck, 261 Iowa 1031, 157 N.W.2d 103 (1968). * * *

"In Appeal of McLain, 189 Iowa 264, 176 N.W. 817, 819 (1920) we said,

'* * * (J)urisdiction of the subject matter is conferred by operation of law, and not by act of the parties or by procedure of the court. It cannot be ousted by act of the parties, if it exists, nor conferred by such acts, if it does not exist. Its existence antedates the particular litigation, and is not conferred by the litigation or by its procedure.'

"Where jurisdiction of the subject matter exists neither insufficiency of allegation nor informality in proceedings will affect that jurisdiction. Reed v. City of Muscatine, 104 Iowa 183, 73 N.W. 579 (1897)."

The Iowa Civil Rights Commission was created by chapter 105A of the Iowa Code. Pursuant to that statute as applied to this case, the Commission has jurisdictional authority to hold hearings "upon any complaint made against a person, an employer, an employment agency, or a labor organization, or the employees or members thereof", charging discrimination in employment practices. Section 105A.5(4), The Code, 1971. Jackson Graham, on November 9, 1970 filed a complaint with the Iowa Civil Rights Commission charging his employer with discriminatory practices in regard to his discharge from employment. The complaint was clearly within the realm of authority given to the Iowa Civil Rights Commission by chapter 105A. If contested, the claim of lack of subject matter jurisdiction could have been properly raised on appeal to the district court under section 105A.10, The Code, 1971, and appropriate relief could have been granted thereon. A writ of prohibition should not have issued in this case on the basis of lack of subject matter jurisdiction.

V. The principal contention the plaintiffs advance to justify the issuance of the writ of prohibition is grounded upon a plea of *res judicata*. Reviewing the chronological setting following the discharge of Jackson Graham effective November 15, 1970, we find the following to be the facts:

November 6–Appeal filed with Iowa Merit Employment Commission

November 9–Complaint filed with Iowa Civil Rights Commission

December 3–Hearing on appeal before Merit Employment Commission—ordered reinstatement effective December 16

December 16–Reinstated

December 24–Discharged for same reasons as prior discharge

December 26–Second appeal to Merit Employment Commission

January 14–Hearing on second appeal before Merit Employment Commission

January 18–Discharge affirmed

May 3–Hearing on complaint before Civil Rights

Plaintiffs claim that complainant Graham cannot seek a ruling from one state agency on the propriety of his discharge subsequent to an adverse determination on the circumstances of his claimed improper discharge by another state agency. Again we decline to pass upon the sufficiency of plaintiffs' contentions, for we hold that a writ of prohibition will not issue on a plea of *res judicata* as that is a

matter which may be raised defensively and does not divest a court of jurisdiction. Carter v. Superior Court, 142 Cal.App.2d 350, 298 P.2d 598 (1956) (mandamus issued to entertain plea); Goodman Bros. v. Superior Court, 51 Cal.App.2d 297, 124 P.2d 644, 648–649 (1942); State v. White, 162 So.2d 697, 699 (Fla.App.1964); Garcia v. Superior Court, 78 Ariz. 351, 280 P.2d 270 (1955); 73 C.J.S. Prohibition § 11, p. 44; 63 Am.Jur.2d, Prohibition, § 33, p. 265; Anno. 159 A.L.R. 1283, 1295.

■ The sufficiency of the *res judicata* defense can properly be determined on appeal to the district court under section 105A.10, The Code, 1971, and appropriate relief could have been granted thereon.

■ VI. In regard to the contention of plaintiffs that the writ properly issued because the hearing examiner for the Civil Rights Commission did not have personal jurisdiction over appellant Pottawattamie County Board of Social Welfare through failure of service of notice of hearing, this court notes from the record that a similar objection raised in a motion to dismiss by plaintiffs before the hearing examiner was overruled. There is no doubt that an appeal to the district court would lie from such ruling.

There is a division of authority on the question of whether appeal is an adequate remedy to test the lower tribunal's jurisdiction over the person. See Anno. 92 A.L.R.2d 247, 254–259. One question involved is whether a petitioner's participation in the trial or his taking an appeal from such judgment order results in a loss or waiver of the jurisdictional objection. Anno. 92 A.L.R.2d 247, 263.

There remains a viable fact issue as to whether appellant Board of Social Welfare did actually enter an appearance. However, this question can be best presented on appeal rather than through the issuance of a writ of prohibition.

■ VII. Finally, plaintiffs assert certain due process objections to the proceedings before the Civil Rights Commission as grounds for the issuance of the writ, but fail to cite any cases supporting their proposition that the claimed defects are jurisdictional. We observe in this connection that a writ of prohibition will not issue for the correction of mere error.

The Iowa Civil Rights Act provides for *de novo* review of a Commission decision (section 105A.10, The Code, 1971), and we find that such review was an adequate remedy under all of the circumstances of this case.

Based upon all of the foregoing, we hold the district court erred in ordering the issuance of a writ of prohibition to restrain the Iowa Civil Rights Commission's hearing on the complaint of Jackson Graham. We therefore reverse and remand this case to the district court for the entry of an order annulling the writ of prohibition in conformity with this opinion.

Reversed and remanded with direction.